IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| K.C., a minor, | ) | |
| by Natural Mother and Next Friend, | ) | |
| KATHLEEN CALAWAY, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 02-2715-STA-cgc |
| | ) | |
| v. | ) | |
| | ) | |
| JODI SCHUCKER, M.D., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON PRETRIAL MATTERS**

On August 20, 2013, the Court conducted a pretrial conference in this matter and discussed with the parties a number of pending motions or requests for relief. A jury trial is currently set for Wednesday, August 28, 2013. The Court issues the following orders on the issues raised by the parties at the pretrial conference.

**I. Defendant's Vicarious Liability for the Acts and Omissions of the Medical Residents**

Both parties sought clarification of the liability issues regarding the acts of the medical residents who attended Plaintiff's labor and delivery in February 1996. The Court briefly received arguments from the parties at the pretrial conference to supplement the briefing the parties had already provided on the question.[1] Based on the parties' briefs, the Court finds that Defendant has

---

[1] Plaintiff actually raised these issues in her motion for partial summary judgment (D.E. # 101) filed on March 1, 2009. The Court denied the motion as moot when the Court granted Defendant summary judgment on a separate issue. On remand neither party raised the issue again until Plaintiff filed a motion in limine to preclude Defendant from asserting comparative fault against any non-party (D.E. # 466) on August 9, 2013. Defendant filed a combined response to Plaintiff's motion and motion in limine to preclude Plaintiff from arguing vicarious

conceded she will not assert any comparative fault defense at trial. It also seems that the parties agree that Plaintiff's claim against Dr. Schucker is based on her failure to supervise the medical residents. The parties continue to disagree, however, on whether Plaintiff has an independent claim for vicarious liability against Dr. Schucker for the acts and omissions of the residents. Defendant argues that Plaintiff has not pleaded such a theory in her complaint, and Plaintiff responds that she has alleged vicarious liability and need not plead a specific theory to support her cause of action in order to state a claim.

The Court need not decide the sufficiency of Plaintiff's pleadings because the case has now advanced far beyond the pleadings stage and the discovery period is complete. The Court would simply state that the issue of whether an attending physician working with medical residents as part of a medical training program may be vicariously liable for the negligence of the residents working under the attending's supervision appears to be a question of first impression in Tennessee. At least one state has recognized such a cause of action.[2] However, the parties have not cited any Tennessee case accepting such a proposition. Under Tennessee law, a physician cannot be vicariously liable for the negligence of another medical professional just because the physician serves as "an intermediate superior employee."[3] In *Johnson v. LeBonheur Children's Medical Center*, the Tennessee Supreme Court held that a hospital may be vicariously liable for the negligence of medical

---

liability, respondeat superior, or agency at trial (D.E. # 479). Plaintiff has responded (D.E. # 484) to Defendant's motion.

[2] *E.g. Rouse v. Pitt Cnty. Mem'l Hosp.*, 470 S.E.2d 44 (N.C. 1996).

[3] *Bass v. Barksdale*, 671 S.W.2d 476, 487–88 (Tenn. Ct. App. 1984); *but see Parker v. Vanderbilt Univ.*, 767 S.W.2d 412 (Tenn. Ct. App. 1988) (holding that a surgeon may be vicariously liable for the acts of other medical professionals assisting in the operating room where the physician exercises direct control over the "means and method" used by the other professionals in the course of the surgical procedure).

residents providing care at the hospital.[4] The issue of whether an attending physician may be vicariously liable for the acts of the residents was not presented in *Johnson*.

In the absence of more specific guidance from the Tennessee Supreme Court, the Court is hesitant to proceed with a cause of action not previously recognized by the Tennessee courts. It is well-established that federal courts sitting in diversity should be "extremely cautious about adopting substantive innovation in state law."[5] At the same time, the Court will let Plaintiff present the theory to the jury and hear what evidence might support Plaintiff's claim for vicarious liability against Dr. Schucker before making a final ruling on the issue. Therefore, Defendant's motion in limine to preclude Plaintiff from arguing vicarious liability, respondeat superior, or agency at trial is denied without prejudice.

## II. Admissibility of the Discovery Deposition of Helen Barnes, M.D.

On April 24, 2007, the parties conducted the deposition of Helen Barnes, M.D. ("Dr. Barnes"), an expert witness for Plaintiff. Plaintiff filed a transcript of the deposition (D.E. # 105) on March 10, 2010. Defendant has designated certain portions of the video deposition to present at trial (D.E. # 467), and Plaintiff has filed objections to Defendant's designation (D.E. # 469).[6] At the pretrial conference, counsel for Plaintiff explained that he had noticed the deposition of Dr. Barnes in 2007 and that at the outset of the proceeding, counsel for Defendant stated his understanding that the deposition was to be a "discovery deposition," which is a recognized practice under the Tennessee Rules of Civil Procedure. Counsel for Plaintiff responded that there was no such thing

---

[4] *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338 (Tenn. 2002); *but see* Tenn. Code Ann. § 68–11–205(d) (2012).

[5] *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607–08 (6th Cir. 2012).

[6] The parties have also submitted a joint proposed pretrial order, which raises the same objection at page 35.

in federal practice but consented to allow counsel for Defendant to open the deposition of Dr. Barnes with a discovery deposition. At the conclusion of Defendant's questioning in the discovery deposition, both sides proceeded to conduct the rest of the deposition.

Now Plaintiff contends that even though the Federal Rules of Civil Procedure do not provide for discovery depositions, the Tennessee Rules of Procedure recognize a distinction between "discovery depositions" and "evidentiary depositions." Under Tennessee law, parties may not use "discovery depositions" at trial. Plaintiff argues then that the Court should not allow Defendant to present Dr. Barnes's "discovery deposition" in the trial of this matter. Defendant responds that the parties reached an agreement that counsel would take a discovery deposition. However, Defendant maintains that the Court should allow Defendant to present the portion of the deposition, which the parties agreed was to be a discovery deposition, because the Federal Rules do not draw any distinction or prohibit the use of discovery depositions at trial.

The Court finds that Plaintiff has the better of this argument. It is true that Rule 32 of the Federal Rules of Civil Procedure permits a party to use "at a hearing or trial, all or part of a deposition."[7] Both parties in this case intend to use the deposition of Dr. Barnes at trial. The issue is whether the Court should allow Defendant to use portions of the Barnes deposition, which the parties had agreed would be a discovery deposition only. As both parties acknowledge, Rule 32 does not draw a distinction between depositions taken during discovery and depositions taken for use at

---

[7] Fed. R. Civ. P. 32(a)(1). The critical inquiry under Rule 32 is whether the proponent of the deposition testimony can show the following: that the opposing party was present or represented at the taking of the deposition; that the deposition testimony is used for some admissible purpose under the Federal Rules of Evidence, and that at least one other condition of Rule 32(a) is satisfied. The parties have not raised any issue with respect to these requirements.

4

trial, depositions that are sometimes described as *de bene esse* depositions.[8] Nevertheless, Rule 32.01(3) of the Tennessee Rules of Civil Procedures states that "depositions of experts taken pursuant to the provisions of Rule 26.02(4) may not be used at trial except to impeach in accordance with the provisions of Rule 32.01(1)."[9]

Here the evidence shows that the parties entered into an agreement that counsel for Plaintiff would take one portion of the Barnes deposition for discovery purposes, and then both sides would proceed with a deposition to be used at trial. According to the transcript of the deposition, counsel for Defendant stated at the opening of the deposition, "Tim [Counsel for Plaintiff], I'm understanding that you're going to take a bunch of, probably trial testimony later. I still would like to take a discovery deposition briefly before we get started if that's acceptable."[10] Counsel for Plaintiff responded "sure." Once counsel for Defendant concluded his discovery deposition, counsel for Plaintiff stated, "Do we need to stop it and start it? to which counsel for Defendant responded, "Why don't we stop it and start it?"[11] Counsel for Plaintiff then stated, "Actually this is moving into an evidentiary. Well, it has been. Whatever. Okay. Doctor, we're going to start from the top with your direct exam, don't kill me. All right."[12] At that point counsel for Plaintiff proceeded to question the witness by asking her to state her name for "the ladies and gentlemen of the jury," a transition that clearly marked the beginning of a deposition for use at trial.

---

[8] *Manley v. AmBase Corp.*, 337 F.3d 237, 247 (2d Cir. 2003) (citing Black's Law Dictionary 408 (7th ed. 1999) (defining a *de bene esse* deposition as one taken "in anticipation of a future need").

[9] Tenn. R. Civ. P. 32.01(3).

[10] Barnes Dep. 4:24–5:3, Apr. 24, 2007.

[11] *Id.* at 162:25–163:3.

[12] *Id.* at 163:4–7.

Based on the parties' agreement to bifurcate the deposition into a discovery phase and a trial phase, the Court believes that it would be fundamentally unfair to permit Defendant to use the deposition testimony given by Dr. Barnes during the discovery portion of her deposition as substantive evidence at trial. This would include all of Dr. Barnes's testimony beginning with page 1 of her deposition transcript and then ending at page 162 of transcript. The Court would emphasize that the Federal Rules of Civil Practice make no distinction between the two types of depositions and that Rule 32(a) would generally permit the use of a "discovery" deposition at trial. However, the Court's decision is grounded on the agreement of the parties and principles of fairness and equity. Both counsel apparently proceeded with the deposition based on an understanding that consistent with the Tennessee state practice, only one portion of the deposition would be used at trial. Rule 29(b) of the Federal Rules of Civil Procedure provides that "[u]nless the court orders otherwise, the parties may stipulate that other procedures governing or limiting discovery be modified."[13] The Court finds no reason to alter the parties' agreement to take only certain portions of Dr. Barnes's deposition for use at trial. Therefore, Defendant may not introduce as substantive evidence any of the testimony reflected in pages 1 through 162 of the transcript of Dr. Barnes's deposition.

The Court would add that nothing in the parties' agreement should preclude Defendant from using portions of Dr. Barnes' discovery deposition for impeachment purposes. It appears to the Court that the Tennessee Rules of Civil Procedure formed the parties' agreement and also forms in part the basis of Plaintiff's motion to exclude the testimony. Tennessee Rule of Civil Procedure 32.01(3) expressly allows a discovery deposition to be used to impeach an expert witness like Dr.

---

[13] Fed. R. Civ. P. 29(b). Some courts have required that any agreement of this kind be reduced to writing. *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001); *Venture Funding, Ltd. v. United States*, 190 F.R.D. 209, 212 (E.D. Mich. 1999). Neither party has invoked this requirement, and the Court finds that deposition transcript itself adequately memorializes the agreement.

Barnes. Therefore, it is proper to allow Defendant to use the Barnes' "discovery deposition" for impeachment purposes only. The Court considers the parties' additional objections to parts of the testimony in the Barnes deposition below.

**III. Life Care Plan and the Financial/Economic Report**

Next Plaintiff has listed David Stewart, a life care planner, and Charles Dennis, Ph.D., an economist, as witnesses in the joint proposed pretrial order. Defendant asserts that Stewart's life care plan has used the gross cost or "sticker price" for medical services to project K.C.'s future medical expenses and that Dennis has reduced the future medical expenses to present cash value. The Magistrate Judge previously ruled that "Plaintiff's recovery shall be limited to amounts paid or payable" and that "Plaintiff shall not be permitted to recover amounts billed, the gross price, or the 'sticker price'" for medical services.[14] Therefore, Defendant requests that the Court exclude the reports prepared by Stewart and Dennis because they include the "sticker price" of future medical expenses.

Plaintiff responds that at the very least the Court should allow Plaintiff to submit amended reports. Plaintiff further argues that the Court should distinguish between past medical expenses, which were paid or payable by a third party at some discount, and future medical expenses, which have yet to be incurred. Plaintiff cites for support the Magistrate Judge's other orders holding that "Plaintiff's past medical expenses should not be admissible as substantive evidence of the reasonableness of Plaintiff's proposed future medical expenses."[15] Plaintiff also points out that K.C.

---

[14] *See* Mag. J.'s Order Granting Def.'s Mot. for Correction 2, Aug. 12, 2013. Upon Defendant's motion, the Magistrate Judge corrected or clarified her previous Omnibus Order of March 12, 2013 (D.E. # 405).

[15] Pl.'s Resp. in Opp'n 2 (D.E. # 486) (citing Mag. J.'s Omnibus Order of March 12, 2013, D.E. # 405).

7

has not historically received all of the future care anticipated in the life care plan, meaning that past medicals and whatever discounted rate at which they were paid or payable may not be relevant. Thus, Plaintiff contends that the wholesale exclusion of the life care plan and the calculation of the present cash value of the plan is not warranted.

The Court finds that Defendant has not shown why under Tennessee law or the previous orders of the Magistrate Judge the Court should exclude the gross value or "sticker price" for K.C.'s future medical expenses. It is true that the Magistrate Judge held that Plaintiff was only entitled to recover amounts paid or payable for K.C.'s medical expenses. But the Magistrate Judge also held that evidence of K.C. receiving services or care through public assistance programs as a minor was not relevant to amounts of public assistance she might receive as an adult. In the course of reaching that decision, the Magistrate Judge stated that "Plaintiff's past medical expenses should not be admissible as substantive evidence of the reasonableness of Plaintiff's proposed future medical expenses . . . ."[16] The Magistrate Judge's order is clear that "the question before this Court [was] not the propriety of Plaintiff recovering [past] expenses, but the relevance of the availability of these past services to the calculation of future medical expenses."[17] Thus, the Magistrate Judge has already concluded that evidence of past medical expenses is not entirely relevant to Plaintiff's proof of future medical expenses.

The Court finds no reason to disturb these rulings. The Tennessee Court of Appeals has held that in order to recover future medical expenses removed "from the realm of speculation," a plaintiff must produce evidence "(1) that additional medical treatment is reasonably certain to be required in the future and (2) that will enable the trier-or-fact to reasonably estimate the cost of the expected

---

[16] Mag. J.'s Omnibus Order 9, March 12, 2013 (D.E. # 405).

[17] *Id.*

8

treatment."[18] It is not necessary for Plaintiff to establish K.C.'s future medical expenses "with mathematical precision."[19] Plaintiff's "proof of damages must be concrete and definite enough to enable the trier-of-fact to make a reasonable assessment of the claimant's damages."[20] Defendant has not shown that Stewart's estimate of future medical expenses is insufficiently "concrete and definite." In fact, Defendant has not even cited any specific portion of the life care plan. Defendant simply argues that the plan is based on the "sticker price" for future medical expenses and should be excluded pursuant to Tenn. Code Ann. § 29–26–119. However, Defendant has cited no authority for the relief she seeks. Therefore, Defendant's Motion is denied.

The Court would add that Defendant remains free to introduce her own evidence to challenge the reasonableness of Plaintiff's cost estimates for K.C.'s future treatment. Plaintiff concedes as much in her brief where she states that "[i]f defendant wishes to argue that any expenses in the life care plan will be paid in whole or part by some third party, or paid at a discount, then the burden is on defendant to demonstrate that fact." While the Court would emphasize that Plaintiff bears the burden to demonstrate in the first instance that the estimate of K.C.'s future medical expenses is reasonable, Defendant will have an opportunity to cross-examine Plaintiff's life care planner at trial and introduce evidence to rebut any of the assumptions contained in the life care plan.

**IV. Exclusion of Plaintiff's Use of the Reptilian Brain Techniques**

Defendant has next requested that the Court preclude counsel for Plaintiff from using a technique of argumentation known as the reptilian brain technique. The Court need not recount Defendant's characterization (broad and ambiguous as it is) of the technique or summarize the

---

[18] *Singh v. Larry Fowler Trucking, Inc.*, 390 S.W.3d 280, 287 (Tenn. Ct. App. 2012).

[19] *Riley v. Orr*, M200901215COAR3CV, 2010 WL 2350475 (Tenn. Ct. App. June 11, 2010) (citation omitted).

[20] *Id.*

9

several articles provided by Defendant which describe the theory and how trial counsel can use certain tactics to prevail on the sensibilities of a juror's "reptilian brain." With specific reference to the trial in this matter, Defendant has only requested that the Court not permit counsel for Plaintiff to argue or refer to the professional standard of care for physician like Dr. Schucker as "safety rules." Plaintiff has responded in opposition.

The Court finds that Defendant has not shown with sufficient particularity just what the Court should preclude opposing counsel from saying or doing at trial. The Court must emphasize that one of the primary issues in this case is the relevant standard of care and whether Dr. Schucker's conduct conformed to that standard of care under all of the circumstances. As in every case, the Court will instruct the jury to base its decision, not on the statements or arguments of counsel, but only on the proof admitted at trial and the law given to the jury by the Court. And as in every case, the Court will not tolerate any attempt by either party to incite the jury to render a verdict based on any other consideration, including the passions and prejudice of the jurors. Therefore, Defendant's motion is denied without prejudice.

**V. Animated Fetal Monitoring Strip**

The next issue raised by the parties was Defendant's plan to use an animated fetal monitoring strip at trial. Although the parties did not argue the point in much depth at the pretrial conference, the Court notes that Plaintiff had previously raised this issue in a timely-filed motion in limine to preclude the use of computer-generated or animated fetal monitoring strips (D.E. # 265), which the Magistrate Judge granted. According to the Magistrate Judge's March 12, 2013 omnibus order (D.E. # 406), "Plaintiff requests that the Court preclude Defendant and her testifying experts from using computer generated or animated fetal monitor strips as an exhibit at trial" on grounds of relevance.[21]

---

[21] Mag. J.'s Omnibus Order 6, Mar. 12, 2013.

The order went on to state that "Defendant agrees that generic computer generated or animated fetal monitor strips are not relevant and should not be received as separate exhibits or provided to the jury during its deliberations [and] . . . that Kaitlyn Calaway's own fetal monitoring strip is admissible."[22] The Magistrate Judge added that "[t]o the extent that the parties wish to discuss any aspects of how Kaitlyn Calaway's monitor strip may be displayed, they should raise such issues at the Pre-Trial Conference in this case."[23] It is not clear to the Court what issues are left to resolve concerning the publication or display of the minor Plaintiff's monitor strip at trial. Therefore, the Court reserves any further ruling on the matter.

**VI. Objections to Plaintiff's Designation of the Deposition of Dr. Barnes**

Defendant has also filed notice of her objections to certain portions of the Barnes deposition, which Plaintiff has designated for use at trial. Obviously, where the Court has sustained any objection, that portion of the testimony will not be shown to the jury. Where the objection is overruled, the testimony will be admissible. The Court's rulings on Defendant's objections are as follows:

(1) 165:5–166:18 - Defendant objects that Dr. Barnes' testimony concerning career obstacles she faced due to her race or gender is inadmissible. Defendant's objection is sustained.

(2) 177:22–178:7 - Same objection. The objection is sustained.

(3) 184:5–21 - Defendant objects to the form, arguing that the question was leading and that the premise of the question misstated the practice at the University of Tennessee. The objection is sustained.

(4) 185:7–14 - Defendant objects that the only foundation for the type of program Dr. Phillips

---

[22] *Id.*

[23] *Id.*

"went through" was counsel's previous statement, which was leading and inaccurate. Defendant's objection is sustained.

(5) 190:2–6 - Defendant objects to the form at which point counsel for Plaintiff re-phrased his question. Defendant's objection is sustained.

(6) 215:18–216:1 - Defendant objects to the form on the grounds that the question was compound. The objection is overruled. Defendant further states if the Court overrules the objection, then Defendant would add an objection to lines 216:2–14. The secondary objection is also overruled.

(7) 233:24–234:5 - Defendant objects that the question was leading and calls for speculation. The objection is overruled.

The Court also notes that Plaintiff has objected to any portion of the Barnes deposition designated by Defendant, which was part of the discovery deposition. As previously noted, the Court finds that Dr. Barnes's discovery deposition began on page 1 at the transcript and continued through page 162. For the reasons already discussed, Plaintiff's objection to any part of the Barnes deposition from those pages is sustained but only insofar as Defendant seeks to use the testimony as substantive evidence. Defendant is permitted to use any portion of the discovery deposition for impeachment purposes.

**VII. Matters Reserved Until Trial**

Finally, at the pretrial conference, the Court specifically reserved its ruling on the following motions until trial: Plaintiff's sealed motion (D.E. # 449); and motion in limine to allow Defendant to use Plaintiff's video during voir dire (D.E. # 478). The Court further reserves ruling on any other motions, objections, or issues that the parties did not raise at the pretrial conference.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: August 22, 2013.